[No. 24523. Department One.   August 15, 1933.]

H. B. PRATT, *Respondent,* v. JAMES PAUTZKE *et al., Defendants,* AETNA CASUALTY AND SURETY COMPANY *et al., Appellants,* POWERS REGULATOR COMPANY *et al., Respondents.*[1]

[1]Reported in 24 P. (2d) 442.

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellant Aetna Casualty & Surety Co.

*Fred C. Dorsey, Harry Sager,* and *Judson Benton,* for appellants Sumner Grocery, Inc., *et al.*

*Roberts, Skeel & Holman, W. R. McKelvy,* and *Howard Carothers,* for respondents.

MITCHELL, J.—Sumner School District No. 320 entered into a written contract with James Pautzke whereby he agreed to furnish labor and material and install a heating plant in a high school building for the agreed compensation of $15,089. The contract provided that payments should be made during the progress of the work, upon the architect's certificate, to the extent of eighty-five per cent of the work done. The Aetna Casualty & Surety Company became surety on the bond of the contractor, the bond being given in compliance with Rem. Rev. Stat., § 1159.

The contract was completed, at which time there had been paid to the contractor $12,623.35, leaving $2,-465.69 owing by the school district—an amount slightly in excess of the fifteen per cent reserve fund provided by Rem. Rev. Stat., § 10320, for the benefit of laborers and materialmen. The contractor, however, had incurred bills for labor and material which were not paid, aggregating more than the amount still owing by the school district.

H. B. Pratt, to whom a claim of lien was assigned, commenced this action against the contractor, the school district, the surety company, and others alleged to have or claim some interest in the subject matter. Still others were brought into the action by order of court, or intervened by leave of court. Also, the Sumner Grocery Company, the John Dower Lumber Company and Russell Ford, each being a judgment creditor of James Pautzke, and having sued out and

served a writ of garnishment affecting the amount reserved by the school district as the balance due the contractor, were allowed to intervene.

The school district appeared by answer and deposited in court, subject to the court's judgment, the balance due on the contract, of which answer and deposit there is no controversy. A number of the defendants did not appear in the action. Others appeared and made up issues for trial.

Those portions of the judgment involved on the appeals are as follows: (1) The combined judgments, including costs, in favor of H. B. Pratt, Powers Regulator Company, a corporation, Buffalo Forge Company, a corporation, and Illinois Engineering Company, a corporation, which are declared to be first claims against the deposit, and, as they exceed the amount of that fund, the judgment provides that the same be prorated among these four creditors, each of which is also given a judgment against the surety company for the full amount due him, together with interest and a specified reasonable attorney's fee, after deducting the amount he shall receive from the deposit in court made by the school district; (2) that the Sumner Grocery Company, the John Dower Lumber Company and Russell Ford, each, on account of his garnishment proceedings and intervention, have judgment against the balance, if any, of the deposit, after the satisfaction of the judgment against that fund in favor of Pratt, Powers Regulator Company, Buffalo Forge Company and Illinois Engineering Company; (3) judgment in favor of the Asbestos Supply Company against the surety company on the bond.

The surety company, the Sumner Grocery Company, the John Dower Lumber Company and Russell Ford have appealed. The three last named join in one brief here.

■ On the appeal of the surety company, the principal controversy arises upon the assignment that the claims of Powers Regulator Company, Illinois Engineering Company, Buffalo Forge Company and Asbestos Supply Company were not filed within thirty days after the completion of the contract and acceptance of the work by the affirmative action of the school board, as required by Rem. Rev. Stat., § 1161, so as to give these four claimants rights of action on the bond. On behalf of this assignment, it is claimed that the work was accepted December 30, 1931. The respondents, however, contend that the work was not accepted until February 2, 1932. The four claims were filed within thirty days after February 2, 1932, but not within that length of time after December 30, 1931.

One of the directors, who was also clerk of the school board, testified to a resolution, dated December 30, 1931, appearing in the minutes of the school board, purporting to approve and accept the work performed by Pautzke upon inspection by them and recommendation of the architect, "subject to all the conditions and guarantees set forth in the specifications and contract for the work." This is the proof on which appellant relies, contending that the work had been completed and accepted on December 30, 1931.

On the contrary, the architect testified that he was with the directors on December 30, 1931, that the meeting was informal, the board not having any record or minute books with them, and that, in discussing the work already done by the contractor, the board agreed to accept it on condition that it be fully completed according to the contract for formal acceptance later on; that, accordingly, on January 2, 1932, he, as architect, wrote to Pautzke of that action and specified four different things needed to be done under the terms of the contract to complete the work; that such work to

be done was substantial, and that one of the things needed required some two days work.

He further testified that, on February 2, 1932, and not until then, he made to the school board his final estimate and certificate of completion of the work by Pautzke, at which time the board formally accepted the work and at that time entered·upon its minutes the resolution bearing date December 30, 1931. He further testified that he prepared the resolution himself just a few days before February 2, 1932, and that the board did not see it until that date, of which testimony there was no direct denial. He admitted that the resolution did not fully and clearly set out what was intended at the meeting of December 30th, namely, a conditional acceptance, in so many words.

Upon this conflicting evidence and other facts and inferences that need not be detailed, the trial court decided that the resolution, notwithstanding its date, was not signed or adopted and spread on the records of the directors until February 2, 1932. The evidence altogether, in our opinion, preponderates in favor of that finding.

But it is argued that the written record of the school board cannot be contradicted by parol evidence. In *Nickeus v. Lewis County,* 23 Wash. 125, 62 Pac. 763, it was said: "We have no statute . . . which makes the records of the board of county commissioners 'the only evidence' of their proceedings." While the facts in that case were different from those in the present case, there they were quite sufficient to suggest the rule we hold to be applicable here. In that case, the court quoted with approval 1 Dillon on Municipal Corporations (4th ed.) § 300:

"The rights of creditors or of third persons cannot be prejudiced by the neglect of the council to keep

proper minutes. Against the corporation, what the council in fact did may be shown by evidence *aliunde* the record kept by it." (Note)

In that case, it was observed, in effect, that, while the language of Dillon on Municipal Corporations was used with respect to the minutes kept by the "council," evidently of a town or city, the same rule is applicable to county commissioners. Likewise, the rule, in our opinion, is manifestly applicable to the proceedings of a board of directors of a school district. Especially must this be so here, where the resolution relied on as constituting the "affirmative action of the board" in accepting the work as completed was not entered until more than thirty days after its date. The rule for which appellant contends would lead to results that should be avoided, and would make it possible, by entering today a resolution of acceptance by the school board dated more than thirty days ago, to deprive a creditor of the benefits of this remedial statute giving a right of action on the bond.

Appellant's authorities upon this subject have been examined. It appears that the case of *Seattle Plumbing Supply Co. v. Maryland Casualty Co.*, 151 Wash. 519, 276 Pac. 552, is mostly relied on. That case is not in point. There the contractor, admitting he had not completed the work, asked for an acceptance of that portion already completed. It was so accepted, but, before doing so, the board held out of the contract price one hundred fifty dollars to cover the cost of completing the work according to the terms of the contract. In effect, the acceptance by the school district was the form or manner by which the contractor, for a consideration, was released from part performance of his original contract. The other authorities cited, when fully considered, cannot be applied to the

facts in this case. This assignment of error cannot be allowed to prevail.

The surety company does not contest the judgment in favor of H. B. Pratt.

On the other appeals presented by the joint brief, the first assignment is that the court erred in giving judgment against the reserve fund in favor of Pratt, Powers Regulator Company, Illinois Engineering Company and Buffalo Forge Company. The argument is that the notices of claims of the respondents were not given to the school district, as required by Rem. Rev. Stat., §§ 10320 and 1161. The pleadings, proof and admissions made at the trial show, in our opinion, that all the requirements of the statute were substantially or fully complied with, and particularly so when considered in the light of the finding heretofore mentioned that the acceptance of the work in the manner required by the statute occurred on February 2, 1932. None of such claims was filed or notice given later than within thirty days from that date.

Another assignment questions the admission of testimony by the architect, which, it is claimed, impeached or modified the resolution of the board dated December 30, 1931. What has been said upon that matter in discussing the appeal of the surety company sufficiently answers this argument.

Other assignments are that the court erred in not giving judgment liens against the reserve fund in favor of each of these appellants. However, they had no statutory laborer's or materialman's liens against the fund, but only the liens of garnishment proceedings arising out of general judgments for money, which garnishment liens rank inferior to those for claimants who, by their labor and material, contributed to the public work.

178

Other nominal assignments of error require, in our opinion, no further or distinctive consideration.

Affirmed on all of the appeals.

MILLARD, HOLCOMB, TOLMAN, and STEINERT, JJ., concur.

