[No. 21423. *En Banc.* April 16, 1929.]

SEATTLE PLUMBING SUPPLY COMPANY, *Appellant,* v. MARYLAND CASUALTY COMPANY *et al.,* *Respondents.*[1]

*Revelle, Revelle & Kells,* for appellant.

*Roberts, Skeel & Holman* and *Elwood Hutcheson,* for respondent Maryland Casualty Co.

*James R. Gates,* for respondent Seattle School District.

[1]Reported in 276 Pac. 552.

MITCHELL, C. J.—Seattle School District No. 1 entered into a contract with P. J. Lavan in June, 1925, for the performance of plumbing work in an addition to the Franklin high school building, in Seattle, and the installation of a sprinkler system on the school grounds, the contract price being $5,127. The contractor and the Maryland Casualty Company gave the statutory bond which, in form and amount, complied with the statute. The Seattle Plumbing Supply Company furnished the contractor certain merchandise and supplies for the work, between the dates of July 3 and November 11, 1925, in the amount of $527 for which it was not paid. It filed notice of its claim with the school board, and thereafter brought this action on the bond. The school district was brought into the case because of allegations in the cross-complaint of the Maryland Casualty Company. Upon the trial, findings of fact and conclusions of law were made and filed against the plaintiff. The plaintiff has appealed from a judgment dismissing the action with prejudice.

As stated by counsel, the only question in the case is whether the plaintiff, appellant, filed its notice of claim in time. Under the terms of the contract, the improvement was to have been completed November 25, 1925. It may be said that the plumbing work within the building was completed, but it appears that, because of delay on the part of another contractor in grading the school grounds, Lavan was unable to complete the installation of a sprinkler system. He prepared material for it which was placed on the ground, dug some ditches and went as far as he could putting in the sprinkler system until some time in December, when he was compelled to suspend work on account of the unfinished condition of the grading. The completion of the grading continued to be so uncertain as to time that Lavan, on January 7, 1926, wrote to the

architect in charge for the district advising him that the work in connection with the contract

". . . is completed and ready for final acceptance, with the exception of a portion of the lawn sprinkler work which has been delayed on account of the delay in filling and grading the property. I would appreciate a final acceptance of the completed portion of the work at your earliest convenience."

Thereupon, and on January 8, 1926, the architect filed with the school board a report and recommendation as follows:

"Mr. P. J. Lavan's contract for the plumbing work on the Franklin high school is completed, with the exception of some 'clean-ups' and that part of the lawn sprinkler system on the south side of the building, which is not in. The contractor is unable to put it in until the grading is completed by the general contractor.

"If the lawn sprinkler system is not in by the time the final payment is due, then $200 will be withheld to cover the cost of the sprinkler system.

"I recommend the acceptance of this contract.

"The amount of the contract is . . . . . . . . $5,127.00
Extras certified to date. . . . . . . . . . . . . . 140.00
Deductions to date . . . . . . . . . . . . . . . . . . None
Making a total of . . . . . . . . . . . . . . . . . . . 5,267.00"

On the same day, January 8, 1926, the school board adopted and recorded in its minutes the following resolution:

"Whereas, the contract of P. J. Lavan, covering plumbing work on the addition to the Franklin high school, in the original amount of $5,127, with certified extras amounting to $140, or a total amount of $5,267, has been reported as completed and ready for acceptance,

"Be it resolved, That said contract is hereby declared completed and the work accepted, subject to terms as to repair of any defective work discovered

within a year, as expressed in the contract, and subject to all necessary clean-up work.''

The contract in this case provided that fifteen per cent of approved estimates as the work progressed should be retained until *thirty days after the final completion and acceptance of the work by the contractors.* The bond recites, among other things, that it is given to protect the district from all claims and demands of laborers, materialmen and all persons furnishing provisions or supplies for the work as provided for in Rem. & Bal. Code, §§ 1159 and 1161, as amended by Laws of 1915, p. 61. Those sections as amended now are Rem. Comp. Stat., §§ 1159 and 1161; the first one of which requires that a bond be furnished with contracts for public improvements conditioned among other things that claims for material and supplies furnished in the improvement shall be paid for; while the other of the two sections provides, among other things, that claimants for goods and materials furnished in the making of the improvement shall have a right of action on the bond,

''. . . Provided, That such persons shall not have any right of action on such bond for any sum whatever, unless within thirty (30) days from and after the completion of the contract with an acceptance of the work by the affirmative action of the board, . . .''
they present to and file with such board a written notice of claim in substance as set out in the statute.

Certainly the board of directors, by its affirmative action in the adoption of the resolution above mentioned, not only declared that the contract was completed, but that it accepted the work, precisely as the statute calls for. A reasonable construction of the letter from the contractor, the architect's report to the board, and the board's resolution altogether, shows that the intention of all the parties was to have the

contract ended or treated as completed. Accordingly, the resolution was passed accepting the work; but, as a small portion of the work originally contemplated had not been performed, it was determined to withhold enough, finally fixed at $150, from the original contract price to meet that expense, not to be paid to Lavan on his contract because the contract was declared completed, but to anyone who might be engaged to do that work. With this understanding, a final estimate was thereafter made and certified to by the architect upon which on February 17, 1926, more than thirty days after the completion of the contract, with an acceptance of the work by the affirmative action of the board, Lavan received, as a final payment $898.45, being the balance due on the contract including the fifteen per cent reserve fund, less the $150.

The action of the board by its resolution, like that involved in the recent case of *Union High School District No. 400 v. Pacific Northwest Construction Co.*, 148 Wash. 594, 269 Pac. 809, was in no way conditional, but absolute; and Lavan having accepted final payment, including the fifteen per cent reserve fund, must be held to have understood and intended, as the school board did, that the contract was completed and the work accepted on January 8, 1926, the date of the resolution.

The completion of the contract and acceptance of the work by the school board on January 8, being binding between the board and the contractor, was likewise binding upon the appellant. In *Denny-Renton Clay & Coal Co. v. National Surety Co.*, 93 Wash. 103, 160 Pac. 1, this question was involved. Among other things, in that case, there was a controversy or contention as to whether the final certificate of a city engineer of the completion of the work or the action of the

city council on that certificate constituted the acceptance of the work. The court said:

"In either event, as pointed out in the Wheeler, Osgood Company case, a legal acceptance binding as between the city and the principal contractor is binding also upon the materialman."

Appellant's notice of claim in this case was filed on May 12, 1926, more than thirty days after the completion of the contract and acceptance of the work. Under the statute, the filing of it was too late.

Affirmed.

PARKER, MAIN, FRENCH, HOLCOMB, and MILLARD, JJ., concur.

TOLMAN, J. (dissenting)—I cannot agree with the majority that the school board, by its resolution, or otherwise, accepted the work as completing or even as substantially completing the contract. The request of the contractor was only that the completed portion be accepted. The report of the architect recognized that the sprinkler portion of the work was not completed (which was a substantial part of the work provided for in the contract), and the recommendation of acceptance was clearly intended to apply only to what work was completed. The resolution of the board should be read in connection with the request and the recommendation, and when so read, it must be construed as accepting only the completed portion of the work. In my opinion the majority has unduly extended the rule of *Union High School District No. 400 v. Pacific Northwest Construction Co.*, 148 Wash. 594, 269 Pac. 809.

I therefore dissent.

FULLERTON and BEALS, JJ., concur with TOLMAN, J.